[No. H032417. Sixth Dist. Sept. 29, 2010.]

AVIVA MALATKA, Plaintiff and Respondent, v.
CHRISTINE HELM, Defendant and Appellant.

**COUNSEL**

Atchison, Barisone, Condotti & Kovacevich and George J. Kovacevich for Defendant and Appellant.

Page, Salisbury & Dudley and Arthur Dudley for Plaintiff and Respondent.

**OPINION**

**RUSHING, P. J.—**

## I. INTRODUCTION

Plaintiff Aviva Malatka has obtained an order restraining one of her neighbors, defendant Christine Helm, from verbally harassing her and her husband. (Code Civ. Proc., § 527.6.)[1] The initial order was filed on May 18, 2007, after hearings on April 20 and May 18, 2007. An amended order adding plaintiff's husband was filed on June 12, 2007.

Rather than appealing from the restraining order, defendant filed a motion to dissolve or modify it. After a hearing on September 25, 2007, the court modified the restraining order, implicitly denying the request to dissolve it. A modified order was filed on October 17, 2007.

On appeal from the latter order, defendant asserts that the trial court erred at the May 18 hearing by refusing to consider declarations she had submitted and by denying her motion to strike one witness's testimony. Plaintiff contends that these issues should have been raised in an appeal from the initial order and are not reviewable in an appeal from a modification of that order. On the eve of oral argument, defendant filed a motion to dismiss this appeal as moot and to reverse the judgment. We will affirm the challenged order after explaining why defendant's contentions are neither reviewable nor meritorious.

## II. PROCEDURAL HISTORY

### A. *The Written Request for a Restraining Order and Opposition*

On April 6, 2007, plaintiff obtained an ex parte court order temporarily restraining defendant from harassing plaintiff and her husband. Defendant lived across the street from them. Plaintiff's application for the order included

---

[1] Unspecified section references are to the Code of Civil Procedure.

a declaration that defendant had cursed and threatened her since they became neighbors in 2002, most recently on April 2, 2007. One of their earliest confrontations in 2003 involved defendant expressing displeasure about plaintiff and her husband cutting down a tree on their property, as the tree had been part of defendant's view for years. Defendant knocked on plaintiff's door later that day and offered an apology, but plaintiff was dismissive. There were other confrontations over time. On April 2, 2007, while plaintiff was unloading her groceries from her car, among other things defendant yelled that plaintiff was a "fucking bitch," "the Capitola whore," and a "fucking cunt," and said, "I will fuck you up, bitch."

Plaintiff's declaration also recited that another neighbor, Al Sehorn,[2] had obtained a temporary restraining order against defendant in August 2001. Defendant had been cutting his flowers and harassing his family. Plaintiff also said that she once saw defendant and her son struggling over a shotgun in the middle of the street.

A hearing was scheduled for April 20, 2007. Defendant filed written opposition on April 18, 2007. Her declaration admitted that she said something inappropriate in connection with the tree, but said it was plaintiff who cursed her when she offered an apology. She denied some other alleged confrontations had occurred. She admitted that, on the final occasion, she told plaintiff off after plaintiff again dismissed her.

Defendant's opposition included declarations from Al Sehorn and Kathleen Keil. Sehorn stated that defendant is a "great neighbor[]." Sehorn denied saying to plaintiff what her declaration reported. Keil stated she is a "good neighbor." She did remember defendant and her son having words over a gun that he inherited.

Defendant submitted a request by Sehorn for dismissal without prejudice on September 5, 2001, of an action seeking a harassment injunction against defendant.

B. *The April 20, 2007 Hearing*

On April 20, 2007, plaintiff appeared with counsel. At the outset of the hearing, the court identified the problem of not having enough time in the morning and plaintiff's attorney being unavailable in the afternoon. Plaintiff testified consistently with her declaration.

Jorge Michael, called by plaintiff, testified that he used to be a neighbor of plaintiff and defendant. Once defendant came to complain about them

---

[2] The clerk's and reporter's transcripts are replete with references to "Seahorn," but his written declaration identifies him as "Sehorn," so we have adopted that spelling throughout.

removing a tree on plaintiff's property that was damaging Michael's car. She said she enjoyed looking at the tree, and they had no right to remove it. He overheard defendant direct profanity at plaintiff.

Defendant said she had no cross-examination for Michael, but asked, "Am I allowed to call him back if I need to talk to them after we discover more?" The court answered affirmatively.

Cindy Clanton, called by plaintiff, testified that she had heard defendant using the kind of language described by plaintiff over a dozen times since 2003. Defendant yelled at and cursed her one day and told her she could not park her car on the street. Clanton told her she would call the police if she would not leave the property. Clanton heard defendant using profanity at plaintiff. On cross-examination, defendant elicited that defendant once called the police on Clanton claiming that Clanton had damaged rocks placed by defendant on a neighborhood easement. Defendant said that she was finished with her cross-examination, and plaintiff proceeded with redirect examination.

Before plaintiff's husband was able to testify, the court interrupted the proceedings, explaining there was no more time that day. There was consideration of another date. Defendant said that May 7 would not work, because "due to the testimony that I've heard, I'm going to call in some other witnesses." The hearing was set for May 18. When asked if she wanted Mr. Michael to come back, defendant said, "Well, I have to—I have to think about what was said and come up with some good questions[.] I'm not an attorney." Mr. Michael said he would be in Australia.

Mr. Michael was recalled to the stand. Defendant established that he had not had a problem parking in the neighborhood.

### C. *The Continued Hearing on May 18, 2007*

The hearing resumed on May 18, 2007, with both sides being represented by attorneys, defendant by Delman Smith. Defendant brought a motion to strike Cindy Clanton's testimony because she was unavailable for cross-examination. The trial court denied the motion.[3]

Ms. Sandberg, offered as a character witness by defendant, testified that she had heard plaintiff yell and swear on three occasions over six years earlier, none involving defendant.

---

[3] This motion and ruling do not appear in the reporter's transcript of the hearing. However, pursuant to an order by this court on July 16, 2008, at a hearing on August 26, 2008, the Santa Cruz County Superior Court prepared a settled statement acknowledging the occurrence of these events on that date.

Plaintiff's husband, called by defendant, testified about defendant confronting them about cutting down a tree. She called plaintiff "a fuckin' bitch," and said they had no right to cut down the tree. On a later occasion, she complained again about them trimming another tree that was scratching Mr. Michael's car. Apart from these occasions, they have been cordial to each other. His wife has told him over the telephone about other confrontations when he was at work.

Defendant testified that when she offered an apology about the tree on the first occasion, plaintiff said, "I don't have to take an apology from you, you f-ing bitch," and slammed the door in her face. Defendant retorted, "Don't call me a f-ing B. I know things about you. You are the f-ing B." Earlier that day, plaintiff had called her a "fucking bitch," and told her to go back to her property.

On a later occasion, plaintiff muttered something under her breath about a dog barking at defendant.

On April 2, 2007, defendant called out to plaintiff from her yard and said she should have accepted her apology. "Let's end this thing; get it over with." Plaintiff gave her a look. Defendant said, "You know it's never going to be peaceful here with you." Defendant admitted calling plaintiff a fucking bitch that day. She denied using the other curses attributed to her, since she did not use that kind of language.

On redirect examination, plaintiff objected to defendant characterizing the declaration provided by Mr. Sehorn. Mr. Smith responded, "I'm not calling for hearsay. . . . [¶] . . . [¶] . . . I'm asking her whether the declaration is true. Just whether he did."

The court stated, "I'm not going to consider—so all sides are—are aware, I'm not going to consider Mr. [Sehorn's] declaration; he's not here—[¶] . . . [¶] . . . He's not subject to cross-examination." Defendant interrupted the court to say that the court could call him. The court said that the hearing had been scheduled four weeks earlier. Defendant began to respond to the court, and Smith admonished her, "please, since you have gone to the trouble to bring me here, would you please just respond to questions—[¶] . . . [¶] and not give speeches?"

When Smith asked her again about Sehorn's declaration, the court reiterated, "I'm not considering what Mr. [Sehorn] has said. He's not here. I'm going to base it on the evidence that was presented." Mr. Smith said, "Thank you. Nothing further of this witness, Your Honor." On recross-examination, defendant admitted that Mr. Sehorn's wife filed a restraining order against defendant.

In rebuttal, plaintiff denied using any obscenities in responding to defendant's apology. She denied using obscene language as Ms. Sandberg had described.

At the close of the hearing, the trial court stated that it was "most impressed by the testimony of Mr. Michael and Ms. Clanton . . . . And these are people who really had no axe to grind." Ms. Sandberg's testimony, on the other hand, had limited relevance. The court found clear and convincing evidence creating a credible threat of violence. The court found that plaintiff "is more credible."

A restraining order was issued May 18, 2007, with an expiration date of May 18, 2009. A first amended restraining order was issued on June 12, 2007, including plaintiff's husband as a protected person. It required defendant to stay 25 yards away from plaintiff, her husband, and their vehicles for a period of two years. The amended order was sent to Attorney Delman Smith on June 18, 2007.

### D. *The Motion to Dissolve or Modify the Restraining Order*

On July 19, 2007, defendant, represented by new counsel, George Kovacevich, filed a motion to dissolve or modify the injunction. The motion included declarations by defendant, her husband, and three friends who claimed that defendant did not use the kind of language that plaintiff had attributed to her. Defendant and her husband stated, in part, that her husband had contacted the Santa Cruz County code enforcement department and caused Ms. Clanton to obtain a permit for an addition to her residence and to redesign the addition. After that, Clanton swerved her car at defendant's husband and she has driven over their plants and run over a "Children Playing" sign on a daily basis.

Defendant argued, among other things, that she was denied due process because the court refused to consider the declarations defendant had submitted and that she was denied the right to impeach Ms. Clanton. While Ms. Clanton was at the first hearing, she did not show up at the second hearing, and the trial court refused to permit defendant "to re-examine Ms. Clanton."

Plaintiff filed opposition to the motion and defendant filed a reply.

The motion to dissolve came on for hearing on September 25, 2007. Regarding the declarations originally submitted by defendant, the court stated that it had reviewed the declarations, "And my tentative is that they would not change my mind on what I heard and what I saw." After a further hearing

at which no testimony was taken, the court adopted its tentative rulings. It stated: "With respect to the additional declarations that were submitted, the Court did consider those and has considered those and has read them. [¶] The Court finds that while they do cast some doubt on the credibility of Ms. Clanton, and they are definitely placing Ms. Helm in a positive light, the Court does find that it would not have affected and changed the Court's ruling." Between the first and second hearings, the court read all the documentation. "So anything that had been attached to Ms. Helm's response to the restraining order was read and considered by the Court," including Mr. Sehorn's declaration.

The court denied the motion to dissolve the restraining order, but modified it to provide that defendant would stay 10 yards away from plaintiff, her husband, and their vehicles. Mr. Kovacevich offered to prepare the order. A modified restraining order form was filed on October 17, 2007, retaining an expiration date of May 18, 2009. The order did not expressly reflect the court's denial of the motion to dissolve the restraining order. Notice of entry of this order was filed on October 29, 2007.

On December 18, 2007, Kovacevich filed a notice of appeal on behalf of defendant from a judgment or order which was entered on "October 29, 2007."

### III. APPEALABILITY

Malatka filed a motion to dismiss this appeal on the basis that Helm is attempting to appeal from a nonappealable order. On April 29, 2009, this court ordered this motion to be considered in connection with the appeal.

Section 904.1, subdivision (a)(6) states that "an order granting or dissolving an injunction, or refusing to grant or dissolve an injunction" is appealable.

Malatka acknowledges that some orders refusing to dissolve injunctions are appealable. Her contention is that such an appeal must be limited to issues newly arising from the motion to dissolve the injunction and that a motion to dissolve cannot serve as a vehicle for reviving issues that could and should have been raised in an earlier appeal from the initial grant of injunctive relief.[4]

---

[4] Plaintiff points out that there actually is no written order refusing to dissolve the injunction, but she concedes that the existing order of October 17, 2007, could be deemed modified to include such a provision.

■ It is established that an order denying a motion to vacate a judgment is deemed appealable only to the extent it raises new issues unavailable on appeal from the judgment. This restriction is imposed to prevent both circumvention of time limits for appealing and duplicative appeals from essentially the same ruling. (*Anderson v. Sherman* (1981) 125 Cal.App.3d 228, 238–239 [178 Cal.Rptr. 38]; see *Spellens v. Spellens* (1957) 49 Cal.2d 210, 228–229 [317 P.2d 613]; *Rooney v. Vermont Investment Corp.* (1973) 10 Cal.3d 351, 358–359 [110 Cal.Rptr. 353, 515 P.2d 297]; *Carlson v. Eassa* (1997) 54 Cal.App.4th 684, 690–691 [62 Cal.Rptr.2d 884].) To further implement this policy, on an appeal from an appealable ruling, an appellate court will not review earlier appealable rulings. (*Berge v. International Harvester Co.* (1983) 142 Cal.App.3d 152, 158 [190 Cal.Rptr. 815]; *Morrissey v. City and County of San Francisco* (1977) 75 Cal.App.3d 903, 906 [142 Cal.Rptr. 527]; *McLellan v. McLellan* (1972) 23 Cal.App.3d 343, 357 [100 Cal.Rptr. 258]; cf. *Oliver v. Sperry* (1934) 220 Cal. 327, 329–330 [30 P.2d 402]; *Sara M. v. Superior Court* (2005) 36 Cal.4th 998, 1018 [32 Cal.Rptr.3d 89, 116 P.3d 550] [dependency].)

Similar reasoning has been applied to rulings on motions to reconsider orders, which are not expressly appealable by statute. The California Supreme Court has noted that there is a split in authority about whether such orders are appealable (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1140, fn. 5 [104 Cal.Rptr.2d 377, 17 P.3d 735]), although the court had earlier held that an order denying a motion for reconsideration was appealable when the motion was based in part on new grounds. (*Freeman v. State Farm Mut. Auto. Ins. Co.* (1975) 14 Cal.3d 473, 477, fn. 2 [121 Cal.Rptr. 477, 535 P.2d 341].)

More recently, this court stated in *Morton v. Wagner* (2007) 156 Cal.App.4th 963, 968–969 [67 Cal.Rptr.3d 818] (*Morton*): "There is a split of authority as to whether an order denying a motion for reconsideration is separately appealable. (*In re Marriage of Burgard* (1999) 72 Cal.App.4th 74, 80–81 [84 Cal.Rptr.2d 739].) [¶] . . . [¶] . . . The majority of recent cases have concluded that orders denying motions for reconsideration are *not* appealable, *even* where based on new facts or law. (*Annette F. v. Sharon S.* (2005) 130 Cal.App.4th 1448, 1458–1459 [30 Cal.Rptr.3d 914]; see also *In re Marriage of Burgard, supra*, 72 Cal.App.4th at pp. 80–81.) These courts have concluded that orders denying reconsideration are not appealable because 'Section 904.1 of the Code of Civil Procedure does not authorize appeals from such orders, and to hold otherwise would permit, in effect, two appeals for every appealable decision and promote the manipulation of the time allowed for an appeal.' (*Reese v. Wal-Mart Stores, Inc.* (1999) 73 Cal.App.4th 1225, 1242 [87 Cal.Rptr.2d 346]; see also *Crotty v. Trader* (1996) 50 Cal.App.4th 765, 769 [57 Cal.Rptr.2d 818]; *Hughey v. City of Hayward* (1994) 24 Cal.App.4th 206, 210 [30 Cal.Rptr.2d 678]; *LiMandri v. Judkins* (1997) 52 Cal.App.4th 326, 333, fn. 1 [60 Cal.Rptr.2d 539]; *Estate of Simoncini* (1991)

229 Cal.App.3d 881, 891 [280 Cal.Rptr. 393]; *In re Jeffrey P.* (1990) 218 Cal.App.3d 1548, 1550, fn. 2 [267 Cal.Rptr. 764].)"

Noting that the motion for reconsideration in *Morton* was not based on new facts or law, this court concluded that the order denying that motion was not appealable. (*Morton, supra,* 156 Cal.App.4th at p. 969.) The order for which reconsideration was sought in *Morton* was a restraining order issued under section 527.6. (156 Cal.App.4th at p. 966.)

The same reasoning has been applied in the context of a ruling modifying a preliminary injunction. (*Chico Feminist Women's Health Center v. Scully* (1989) 208 Cal.App.3d 230, 252–253 [256 Cal.Rptr. 194] (*Scully*).) In *Scully,* on which plaintiff relies, a preliminary injunction was issued on February 27, 1986, and modified in part on April 25, 1986. In an appeal from the latter order, the appellants sought to challenge not only the modifications of the injunction, but also unmodified parts of the original injunction issued on February 27. After discussing the restrictions on appeals from motions to vacate judgments and noting that the original preliminary injunction was appealable, the court concluded: "The general rule controls here. To allow defendants to challenge the subject paragraphs of the earlier preliminary injunction would allow them two appeals on identical grounds. Moreover, if defendants' theory were allowed, it would theoretically allow wholesale challenges to a preliminary injunction many years after its entry, merely because a court modified the injunction in some insignificant manner and even though the trial court was never given a chance to cure the asserted illegality." (*Id.* at p. 252.) "We perceive no reason why defendants should be able to use the order of April 25, amending the injunction, as an artificial springboard from which to launch an appeal that could have been taken earlier." (*Id.* at p. 251.)

The *Scully* court explained: "Our conclusion is buttressed by cases allowing appeals from orders modifying injunctions. So far as we can tell, the courts of this state have entertained such appeals where (1) the later orders have modified an injunction 'in important particulars' (*Cherry Hill Gold Min. Co. v. Baker* (1905) 147 Cal. 724 [82 P. 370]) and the appeal challenges the modifications (see, e.g., *Barrett v. Lipscomb* (1987) 194 Cal.App.3d 1524, 1528 [240 Cal.Rptr. 336]; *Palo Alto-Menlo Park Yellow Cab Co. v. Santa Clara County Transit Dist.* (1976) 65 Cal.App.3d 121, 129 [135 Cal.Rptr. 192]; *West Coast Constr. Co. v. Oceano Sanitary Dist.* (1971) 17 Cal.App.3d 693, 698 [95 Cal.Rptr. 169]); or (2) the appeal may have been timely even if taken from the original injunction (e.g., *People v. Associated Oil Co.* [(1931)] 212 Cal. [76,] 77 [297 P. 536]); or (3) the appellant contested the *procedures* by which the injunction was modified (e.g., *Christopher v. Condogeorge* (1900) 128 Cal. 581, 584–585 [61 P. 174]; *Hobbs v. Amador and Sac. C. Co.*

(1884) 66 Cal. 161, 163 [4 P. 1147]). We have been cited no case, nor are we aware of one in California, in which an appeal such as that pressed by defendants has been allowed." (*Scully, supra*, 208 Cal.App.3d at pp. 252–253.)

 In response to plaintiff's motion to dismiss, defendant simply asserts that an order refusing to dissolve an injunction is appealable by statute. The same may be said of an order denying a motion to set aside a judgment (see *Rooney v. Vermont Investment Corp., supra*, 10 Cal.3d 351, 358), but that does not preclude application of judicial restrictions on reviewability. (E.g., *Payne v. Rader* (2008) 167 Cal.App.4th 1569, 1576 [85 Cal.Rptr.3d 174] [motion to vacate a dismissal after a demurrer was sustained].) Without conflating restrictions on appealability and reviewability, we conclude that, to the extent the current appeal from an order implicitly refusing to dissolve a restraining order presents issues that could have been raised in an appeal from the original restraining order, those issues are not reviewable in this appeal. On the other hand, to the extent the motion to dissolve was dependent on new facts and law, such issues are reviewable. We proceed to consider whether defendant's appeal has raised any such new issues.

### IV. DECLARATIONS OFFERED BY DEFENDANT

Defendant complains that the trial court erred in refusing to consider declarations she offered as evidence at the hearings on April 20 and May 18, 2007.

As stated above, defendant's opposition to the application for a restraining order offered written declarations by self-described neighbors Al Sehorn and Kathleen Keil. There was no mention of either declaration at the initial hearing on April 20, at which plaintiff, Jorge Michael, and Cindy Clanton testified before the court ran out of time. In selecting a date for the continued hearing, defendant said that May 7 would not work out for her, because "due to the testimony that I've heard, I'm going to call in some other witnesses." Ultimately the date of May 18 was selected. As explained above, at the continued hearing, defendant appeared with an attorney and called a character witness and plaintiff's husband, in addition to testifying herself. During redirect examination of defendant, her counsel began to ask her twice about the declaration that Mr. Sehorn had given her. In response to plaintiff's hearsay objection, the court announced that it was not going to consider Mr. Sehorn's declaration as evidence because he was not present.

There was no objection at the continued hearing to the court's statements about Mr. Sehorn's declaration on the basis that opposition to a restraining

order under section 527.6 can be based on a written declaration.[5] As plaintiff points out, "nowhere in the record on appeal does it appear that defendant or her trial counsel ever requested the trial court to consider [Kathleen Keil's] declaration at trial." "Neither defendant, nor her trial counsel, ever asked the trial court to consider the whole declaration of Mr. Sehorn."

Not until defendant's motion to dissolve the injunction was filed on July 19, 2007, did defendant, through new counsel, complain that the trial court had "summarily and improperly refused to consider any of the sworn declarations Mrs. Helm submitted in her defense."

Based on our review of the record, it is clear that any error by the trial court in refusing to consider the declarations of Sehorn and Keil as defense evidence at the hearing on May 18, 2007, could have been raised in an appeal

---

[5] The general rule is that a written declaration, though it has the evidentiary force of a sworn affidavit (§ 2015.5) is archetypical hearsay, inadmissible at trial over objection unless allowed by special statute or stipulation of the parties. (*Elkins v. Superior Court* (2007) 41 Cal.4th 1337, 1354 [63 Cal.Rptr.3d 483, 163 P.3d 160]; Evid. Code, § 1200.) Section 2009 recognizes several exceptions to this general rule: "An affidavit may be used . . . to obtain a provisional remedy, . . . or upon a motion, and in any other case expressly permitted by statute."

Sections 527.6 and 527 appear to be statutory exceptions to the general rule. Section 527.6, subdivision (c) expressly allows for an application for a temporary restraining order to be issued based on "an affidavit that, to the satisfaction of the court, shows reasonable proof of harassment of the plaintiff by the defendant, and that great or irreparable harm would result to the plaintiff." The same is true of an application for a preliminary injunction. "A preliminary injunction may be granted at any time before judgment upon a verified complaint, or upon affidavits if the complaint in the one case, or the affidavits in the other, show satisfactorily that sufficient grounds exist therefor." (§ 527, subd. (a).)

Likewise, the general statute applying to preliminary injunctions specifies that "The opposing party may, in response to an order to show cause, present affidavits relating to the granting of the preliminary injunction, and if the affidavits are served on the applicant at least two days prior to the hearing, the applicant shall not be entitled to any continuance on account thereof." (§ 527, subd. (e).)

In what appears to be a departure from the otherwise parallel structure of these statutes, section 527.6 does not prescribe or proscribe any particular form of opposition. "The defendant may file a response that explains, excuses, justifies, or denies the alleged harassment or may file a cross-complaint under this section. At the hearing, the judge shall receive any testimony that is relevant, and may make an independent inquiry." (§ 527.6, subd. (d).) This last provision has been construed as precluding a trial court from relying entirely on declarations when the parties have offered oral testimony. (*Schraer v. Berkeley Property Owners' Assn.* (1989) 207 Cal.App.3d 719, 732–733 [255 Cal.Rptr. 453] (*Schraer*).) We consider it to be an open question whether the statute implicitly authorizes a declaration in opposition to be considered as testimony. In a footnote, *Schraer* did state, "Both sides may offer evidence by deposition, affidavit, or oral testimony, and the court *shall receive* such evidence, subject only to such reasonable limitations as are necessary to conserve the expeditious nature of the harassment procedure set forth by Code of Civil Procedure section 527.6." (*Id.* at p. 733, fn. 6.) As noted by plaintiff, this statement was mere dictum. We observe that the issue on appeal in *Schraer* was whether the court could preclude defendants from offering oral testimony, not whether the court was required to accept their written declarations.

from the written restraining order that was issued at the conclusion of that hearing. The notice of appeal in this case does not purport to appeal from the May 18, 2007 restraining order or the first amended restraining order of June 12, 2007. We note that the December 18, 2007 appeal was filed over 180 days from the filing of the June 12 amended order, the outside time limit for filing an appeal from that order. (Cal. Rules of Court, rule 8.104(a)(3).) Because this alleged evidentiary error could have been raised in an appeal from an earlier order, we conclude that it is not reviewable on appeal from the October 17, 2007 order implicitly denying the request to dissolve the restraining order.

Plaintiff also identifies a second reason for not reaching the merits of defendant's contention. In order to obtain appellate review of a ruling excluding evidence, its proponent must have made know to the court "[t]he substance, purpose, and relevance of the excluded evidence . . . by the questions asked, an offer of proof, or by any other means." (Evid. Code, § 354, subd. (a).) In this case, defendant neither objected at the hearing on May 18, 2007, to the court's exclusion of this evidence or offered to prove the contents of the declarations at that hearing.[6] Instead, on appeal defendant claims to have raised the issue in a timely way by written argument filed on July 19, 2007, two months after the restraining order was issued. We conclude that defendant, by failing to make a timely objection or offer of proof, has forfeited her claim that the trial court erred by failing to consider declarations attached to her opposition. (Cf. *West Coast Constr. Co. v. Oceano Sanitary Dist.*, *supra*, 17 Cal.App.3d at pp. 702–703; *Pacific Hills Homeowners Assn. v. Prun* (2008) 160 Cal.App.4th 1557, 1567 [73 Cal.Rptr.3d 653].) But even if we were to conclude that the substance and relevance of the declarations were adequately proffered by defendant at the May 18 hearing or that a proffer would have been futile, their exclusion should have been challenged by an appeal from the May 18 restraining order and not by a motion to dissolve the order filed over two months later.

## V. CROSS-EXAMINATION BY DEFENDANT

On appeal defendant also contends that the trial court erred in denying a motion to strike the testimony of Cindy Clanton because she did not appear for further cross-examination on May 18, 2007, the date of the continued

---

[6] While defendant's attorney did ask defendant whether Mr. Sehorn gave her a declaration that contradicted plaintiff's declaration, in response to a hearsay objection, counsel explained, "I'm not calling for hearsay. . . . [¶] . . . [¶] . . . I'm asking her whether the declaration is true. Just whether he did." It is unclear from this colloquy whether the essential question was simply whether Mr. Sehorn gave defendant a declaration, which would not call for hearsay, or whether he gave her a declaration that contradicted plaintiff's. We do not regard this equivocal statement as an offer of proof of the substance, purpose, and relevance of the excluded evidence.

hearing. She asserts, "The Court, after previously telling Appellant she could recall witnesses, changed course and allowed Ms. Clanton's prior testimony to stand even though Appellant did not have the opportunity to impeach her . . . in view of her failure to return to court for the continued hearing."

While the original reporter's transcript did not reflect that defendant made such a motion to strike, its occurrence has subsequently been established by way of a settled statement. Again, it appears that any error by the trial court in refusing to strike testimony on May 18, 2007, could and should have been challenged by appeal from the restraining order issued on May 18. We conclude that this error is not reviewable on appeal from the order of October 17, 2007, implicitly refusing to dissolve the restraining order.

Moreover, there is no apparent merit to defendant's claim that the trial court erred in denying her motion to strike Clanton's testimony. In a declaration in support of her motion to dissolve the restraining order, defendant asserted: "During the April 20, 2007 hearing, I asked the Court for permission to re-examine Ms. Clanton. The Court granted my request."

This assertion is not supported by the reporter's transcript of that hearing. After direct examination of Mr. Michael, and before Ms. Clanton testified, defendant said she had no cross-examination for Michael, but wondered if she could call him back after she discovered more. The court assured her that she could. Defendant did cross-examine Clanton at the hearing until she had no more questions. In discussing the date of the continued hearing, defendant said she might want Michael back if she could come up with some good questions. When it appeared that Michael would be out of the country, defendant was allowed to cross-examine him on the 20th.

The record reflects no such discussion of recalling Clanton at the continued hearing. It does not appear from the record that the trial court either ordered Clanton to return for the continued hearing or excused her as a witness, that defendant asked the court to order Clanton to return, or that, prior to the continued hearing, defendant subpoenaed Clanton, asked her to be on telephone standby, or made any efforts to secure Clanton's appearance at the continued hearing. Though defendant represented herself at the initial hearing, this did not excuse her from taking steps required of attorneys. (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246–1247 [19 Cal.Rptr.3d 416].) Since defendant did not request Clanton's presence at the continued hearing, she cannot fault the trial court for either failing to obtain Clanton's presence or for denying defendant's motion to strike. (*Ah Tong v. Earle Fruit Co.* (1896) 112 Cal. 679, 681 [45 P. 7]; *Simmons v. Dryer* (1963) 216 Cal.App.2d 733, 745 [31 Cal.Rptr. 199].)

## VI. MOOTNESS

On the eve of oral argument, defendant filed a motion requesting dismissal of this appeal and reversal of the judgment because her appeal is moot, as the challenged restraining order expired by its terms on May 18, 2009. At oral argument, in response to the court's inquiry, defendant's counsel offered several reasons for not filing this motion until 516 days after the alleged mootness, including defendant's wishes, counsel's health, and his recent discovery of authority for obtaining reversal.[7]

■ *Environmental Charter High School v. Centinela Valley Union High School Dist.* (2004) 122 Cal.App.4th 139 [18 Cal.Rptr.3d 417] stated pertinent law on page 144: "If relief granted by the trial court is temporal, and if the relief granted expires before an appeal can be heard, then an appeal by the adverse party is moot. (See *American Civil Liberties Union v. Board of Education* (1961) 55 Cal.2d 167, 181–182 [10 Cal.Rptr. 647, 359 P.2d 45].) However, 'there are three discretionary exceptions to the rules regarding mootness: (1) when the case presents an issue of broad public interest that is likely to recur [citation]; (2) when there may be a recurrence of the controversy between the parties [citation]; and (3) when a material question remains for the court's determination [citation].' (*Cucamongans United for Reasonable Expansion v. City of Rancho Cucamonga* (2000) 82 Cal.App.4th 473, 479–480 [98 Cal.Rptr.2d 202].)"

As indicated in footnote 5 (see, *ante*, at p. 1085), this appeal initially presented an issue of first impression, namely whether section 527.6 implicitly authorizes a declaration in opposition to be considered as testimony. Due to the procedural posture of this question, we have not been required to resolve that issue, but we regard it as an issue of broad public interest that is likely to recur. We have been required to reconcile the apparent inconsistency between section 904.1, subdivision (a)(6) and *Scully, supra*, 208 Cal.App.3d 230 in part III. above. We also regard that issue as of sufficient public interest to present a viable appellate issue. Accordingly, we decline defendant's request to reverse the judgment because her appeal has become moot.

---

[7] There is authority for reversing a judgment after determining the appeal is moot rather than simply and routinely dismissing the appeal. *Paul v. Milk Depots, Inc.* (1964) 62 Cal.2d 129 [41 Cal.Rptr. 468, 396 P.2d 924] did so in order to avoid implicitly affirming a judgment invalidating a regulation on constitutional grounds. (*Id.* at pp. 134–135.) *Giles v. Horn* (2002) 100 Cal.App.4th 206 [123 Cal.Rptr.2d 735] did so "in order to avoid ambiguity." (*Id.* at p. 229.) Thus, reversal is an available alternative when an appellate court does not want to send a signal that it implicitly approves a questionable trial court judgment. In view of our other conclusions in this opinion, we have no reservations about the trial court judgment meriting this treatment.

## DISPOSITION

The order of October 17, 2007, is affirmed. Motions by plaintiff and defendant to dismiss the appeal are denied. Plaintiff shall recover costs on appeal and may be awarded attorney fees in the discretion of the trial court. (§ 527.6, subd. (i).)

Premo, J., and Elia, J., concurred.