[No. B171813. Second Dist., Div. Two. Aug. 18, 2004.]

ENVIRONMENTAL CHARTER HIGH SCHOOL, Plaintiff and Respondent,
v.
CENTINELA VALLEY UNION HIGH SCHOOL DISTRICT, Defendant
and Appellant.

COUNSEL

Burke, Williams & Sorensen, Bonifacio Bonny Garcia, James Russell Lynch and Nitasha Kaur Sawhney for Defendant and Appellant.

Manatt, Phelps & Phillips, David Elson, Randall William Keen, JoAnne M. Sweeny and Melissa D. Goetz for Plaintiff and Respondent.

OPINION

**ASHMANN-GERST, J.**—The trial court directed appellant Centinela Valley Union High School District (Centinela) to make school facilities available to respondent Environmental Charter High School (Environmental) pursuant to Education Code section 47614.[1] Centinela appeals on the grounds that Environmental did not provide documentation for its facilities request and was not entitled to writ relief.

We reverse.

## FACTUAL AND PROCEDURAL HISTORY

Environmental operates as a charter school. Originally, it sought sponsorship as a charter school by Centinela but Centinela refused. Thereafter,

---

[1] All further statutory references are to the Education Code unless otherwise indicated.

Environmental obtained its charter through another school district in December 2000 and began teaching students in August 2001.

On October 1, 2002, Environmental wrote Centinela and submitted a request for facilities based on section 47614, subdivision (b). In its request, Environmental projected a total of 246 in-district students, including 83 in the class of 2005, 81 in the class of 2006, and 82 in the class of 2007. It also provided information about its instructional calendar, the general geographic area in which it wished to locate, and special facility needs for its program.

Centinela requested the following information: student names and dates of birth, home addresses, names of parents or guardians, grade levels, and schools and school districts attended. In response, Environmental stated that it could not comply because the information was confidential and could not be released without parental consent.[2] As well, Environmental maintained that it had provided all the information required by the regulations. It did, however, offer to discuss alternative methods for addressing Centinela's concerns.

On October 31, 2002, Centinela informed Environmental, inter alia, that its request was incomplete because it lacked the documentation required by California Code of Regulations, title 5, section 11969.9, subdivision (c)(1)(C) and that its facilities request for 2003–2004 was denied. According to Centinela, if Environmental wanted to make a facilities request for 2004–2005, then it would have to provide the same student information that was requested for 2003–2004.

Pursuant to Code of Civil Procedure section 1085, Environmental filed a verified petition for writ of mandate on April 24, 2003. It sought to compel

---

[2] According to Environmental, this information is confidential pursuant to section 49076, which restricts access to "pupil records" to certain persons and entities absent written parental consent or court order. We need not decide if this statute covers some or all of the information requested by Centinela. However, for the parties' future reference, we direct their attention to sections 49061 and 49073. Section 49061, subdivision (b) provides in relevant part that " '[p]upil record' means any item of information directly related to an identifiable pupil, other than directory information." Subdivision (c) of that statute goes on to provide that " '[d]irectory information' means one or more of the following items: pupil's name, address, telephone number, date and place of birth, major field of study, participation in officially recognized activities and sports, weight and height of members of athletic teams, dates of attendance, degrees and awards received, and the most recent previous public or private school attended by the pupil." (§ 49061, subd. (c).) Directory information can be released by a school district to the extent that is allowed by section 49073.

Centinela to process the request for facilities in good faith and adhere to all statutory and regulatory requirements. Subsequently, the parties negotiated a confidentiality agreement and Environmental agreed to provide student information.[3] But then Centinela refused to sign the agreement.

The matter came on for hearing. The trial court concluded that even though Environmental offered less foundation for its projections than the charter school in *Sequoia Union High School Dist. v. Aurora Charter High School* (2003) 112 Cal.App.4th 185, 188–189 [5 Cal.Rptr.3d 86] (*Sequoia*), Environmental still gave Centinela "a fairly substantial amount of information." Based on language in *Sequoia*, the trial court found that Environmental's information was sufficient and ordered Centinela to provide facilities for the current school year.

This timely appeal followed.

## MOOTNESS

■ If relief granted by the trial court is temporal, and if the relief granted expires before an appeal can be heard, then an appeal by the adverse party is moot. (See *American Civil Liberties Union v. Board of Education* (1961) 55 Cal.2d 167, 181–182 [10 Cal.Rptr. 647, 359 P.2d 45].) However, "there are three discretionary exceptions to the rules regarding mootness: (1) when the case presents an issue of broad public interest that is likely to recur [citation]; (2) when there may be a recurrence of the controversy between the parties [citation]; and (3) when a material question remains for the court's determination [citation]." (*Cucamongans United for Reasonable Expansion v. City of Rancho Cucamonga* (2000) 82 Cal.App.4th 473, 479–480 [98 Cal.Rptr.2d 202].)

The trial court ordered Centinela to provide Environmental with facilities for the 2003–2004 school year beginning on January 5, 2004. But, pending appeal, the 2003–2004 school year expired. Nonetheless, this is a case that calls upon us to decide the merits because the parties' dispute over application of the regulations to a facilities request is likely to recur.

## CONTENTIONS

According to Centinela:

1. This case is governed by California Code of Regulations, title 5, section 11969.9, not *Sequoia*. However, the trial court disregarded the controlling regulations and relied on a straight interpretation of section 47614.

---

[3] In its brief, Environmental informs us that it obtained parental consent.

2. California Code of Regulations, title 5, section 11969.9, subdivision (c)(1)(C), which requires documentation for a charter school's reasonable projection of enrollment, applies to all charter schools.

3. The requested student information was subject to disclosure.

4. The facilities request did not provide any documentation. As a result, writ relief was improper.

5. The petition was barred by laches.

## STANDARD OF REVIEW

Code of Civil Procedure section 1085, subdivision (a) authorizes a court to issue a writ to any inferior tribunal, corporation, board, or person "to compel the admission of a party to the use and enjoyment of a right."

"The writ will lie where the petitioner has no plain, speedy and adequate alternative remedy, the respondent has a clear, present and usually ministerial duty to perform, and the petitioner has a clear, present and beneficial right to performance. [Citations.]" (*Kong v. City of Hawaiian Gardens Redevelopment Agency* (2002) 101 Cal.App.4th 1317, 1325–1326 [125 Cal.Rptr.2d 1].)

Trial courts must "uphold an agency action unless it is arbitrary, capricious, lacking in evidentiary support, or was made without due regard for the petitioner's rights. [Citations.]" (*Sequoia, supra,* 112 Cal.App.4th at p. 195.) When considering a case, a trial court must "ensure that an agency has adequately considered all relevant factors, and has demonstrated a rational connection between those factors, the choice made, and the purposes of the enabling statute. [Citation.]" (*Ibid.*) Consequently, because "trial and appellate courts perform the same function in mandamus actions, an appellate court reviews the agency's action de novo." (*Ibid.*)

Environmental urges us to apply the substantial evidence test to the trial court's finding that the facilities request was sufficient to document how many students were meaningfully interested in enrolling for the following year. The case Environmental relies upon—*Pacific Gas and Electric Co. v. Department of Water Resources* (2003) 112 Cal.App.4th 477 [5 Cal.Rptr.3d 283] (*Pacific Gas*)—states that a trial court's ruling under Code of Civil Procedure section 1085 is "ordinarily confined to an inquiry as to whether the findings and judgment of the trial court are supported by substantial, credible and competent evidence." (*Pacific Gas,* at p. 491.) But it goes on to explain that when an appellate court is asked to resolve questions

of law on undisputed facts, then the standard of review requires an independent analysis. (*Ibid.*) The facts in this case are, as were the facts in *Sequoia*, undisputed. Consequently, we follow the standard of review set forth in *Sequoia* and supported by *Pacific Gas*.

## DISCUSSION

*I. The Statutory and Regulatory Scheme.*

Section 47600, which is known as the Charter Schools Act of 1992, "allows the establishment of a school that operates independently from the existing school district structure. [Citation.] A charter school within a particular school district is established when a petition, containing the proposed charter for the school and signed by a specified percentage of designated people, is submitted to the district's governing board and the board grants the charter. [Citation.]" (*Sequoia, supra,* 112 Cal.App.4th at pp. 188–189.) In November 2000, Proposition 39 amended section 47614 (*Sequoia,* at p. 190) to provide, inter alia, that each "school district shall make available, to each charter school operating in the school district, facilities sufficient for the charter school to accommodate all of the charter school's in-district students in conditions reasonably equivalent to those in which the students would be accommodated if they were attending other public schools of the district." (§ 47614, subd. (b).)

██ A charter school must provide "a reasonable projection of [its] average daily classroom attendance by in-district students for the following year." (§ 47614, subd. (b)(2).) If the charter school generates less average daily attendance by in-district students than it projected, then "the charter school shall reimburse the district for the over-allocated space at rates to be set by the State Board of Education." (*Ibid.*) A school district may deny a facility request that is based upon projections of fewer than 80 units of average daily classroom attendance for the year. (§ 47614, subd. (b)(4).) To carry these rules into effect, subdivision (b)(6) empowers the Department of Education to propose, and the Board of Education to adopt, regulations designed to implement subdivision (b).

Implementing regulations were proposed and adopted. They were made operative on August 29, 2002.

California Code of Regulations, title 5, section 11969.9, subdivision (b) provides that a charter school must request facilities by October 1 of the preceding fiscal year. Subdivision (c)(1) of that regulation establishes, inter alia, the following: "(1) The written facilities request must include:

[¶] (A) reasonable projections of in-district and total ADA[4] and in-district and total classroom ADA; [¶] (B) a description of the methodology for the projections; [¶] (C) if relevant, documentation of the number of in-district students meaningfully interested in attending the charter school; [¶] (D) the charter school's instructional calendar; [¶] (E) information regarding the general geographic area in which the charter school wishes to locate; and [¶] (F) information on the charter school's educational program that is relevant to assignment of facilities. [¶] (2) Projections of in-district ADA, in-district classroom ADA, and the number of in-district students shall be broken down by grade level and by the school in the school district that the student would otherwise attend." (Cal. Code. Regs., tit. 5, § 11969.9, subd. (c)(1).) Under subdivision (d), a school district must provide a charter school with "a reasonable opportunity to respond to any concerns raised by the school district regarding the projections." (Cal. Code Regs. tit. 5, § 11969.9, subd. (d).)

II. *Sequoia.*

In 2003, the First Appellate District decided *Sequoia.* In that case, as here, the school district was ordered to provide facilities to a charter school. On appeal, the school district argued that the charter school failed to demonstrate that its student body was comprised of at least 80 in-district students. (*Sequoia, supra,* 112 Cal.App.4th at p. 188.) The appellate court affirmed the judgment.

"To qualify for district facilities," the *Sequoia* court explained, "a charter school '*shall* provide the school district [in which it is operating] with a *reasonable projection* of the charter school's average daily classroom attendance by in-district students for the following year,' and the district '*shall* allocate facilities to the charter school for that following year based upon this projection.' [Citation.]" (*Sequoia, supra,* 112 Cal.App.4th at p. 195.)

The court noted that "[t]he statute is silent as to any mechanism for calculating the 'reasonable projection' of in-district students, the evidentiary standard of proof for the projection, the procedure for the district to question the reasonableness of the projection, or the district's right to deny the request when the school's projection is for 80 or more units of average daily attendance." (*Sequoia, supra,* 112 Cal.App.4th at p. 195.) Because the word "reasonable" modifies "projection," the court held that "the statute necessarily implies the charter school must offer some explanation in its facilities request for the basis for its projection. However, the statute does not require the school to demonstrate arithmetical precision in its projection or provide the kind of documentary or testimonial evidence that would be admissible at a

---

[4] ADA is an acronym for average daily classroom attendance. (Cal. Code Regs., tit. 5, § 11969.2, subd. (a).)

trial. Rather, the school is subsequently penalized if its projection was incorrect by having to reimburse the district for over-allocated space. [Citation.]" (*Id.* at pp. 195–196.)

The court theorized that, "in the absence of any other articulated statutory procedures for requesting facilities, section 47614 requires a district to allocate facilities to a requesting charter school once the school provides a reasonable projection of at least 80 units of average daily attendance for the following year. [Citation.]" (*Sequoia, supra,* 112 Cal.App.4th at p. 196.)

According to the court, the charter school did in fact provide a reasonable projection of in-district students. The projection "was based on [the charter school's] historical attendance rates (it had then been in operation for two years), its current enrollment of 90 students, the expressed interest of current students and their families of continuing education at [the charter school], and the expressed interest of prospective students and their families in attending [the charter school] during the next academic year. It anticipated a student body of 30 freshmen, 30 sophomores, 30 juniors, and 20 seniors." (*Sequoia, supra,* 112 Cal.App.4th at p. 196.)

In a footnote, *Sequoia* noted that the State Board of Education adopted regulations the day after the hearing in the trial court. The court then stated: "Even if these regulations were fully operative when [the charter school] made its December 2001 facilities request, [the school district's] March 2002 denial would be an abuse of discretion. Although the regulations permit a district to question the projected enrollment, they do not permit the district to deny the request once the school has responded to the district's concerns with a showing of a projected 80 units of average daily attendance. [The school district's] denial raised a concern about [the charter school's] projected attendance and invited [the charter school] to respond. [The charter school] did so via the declaration of Alice Miller in support of [the charter school's] mandamus petition. She declared that [the charter school] 'historically maintained 95 percent attendance of students,' and her declaration included documents from approximately 93 in-district students who were either currently attending [the charter school] and planning to continue or had applied for admission for the 2002–2003 school year." (*Sequoia, supra,* 112 Cal.App.4th at p. 196, fn. 4.)

III. *Applicability of the Documentation Requirement.*

In construing a regulation, we take heed of the following guideposts: Our task is to arrive at a construction that carries out regulatory intent. (*Simi Corp. v. Garamendi* (2003) 109 Cal.App.4th 1496 [1 Cal.Rptr.3d 207].) "The words used are the primary source for identifying the drafter's intent.

[Citation.] We give those words their usual and ordinary meaning where possible. [Citations.] We give significance to every word, avoiding an interpretation that renders any word surplusage. [Citation.] We also interpret the words of a regulation in context, harmonizing to the extent possible all provisions relating to the same subject matter. [Citation.]" (*Id.* at pp. 1505–1506, 1 Cal. Rptr.3d 207.) " 'If the language is clear, there is no need to resort to other indicia of intent; there is no need for construction. [Citation.]' [Citation.]" (*Gregory v. State Bd. of Control* (1999) 73 Cal.App.4th 584, 593–594 [86 Cal.Rptr.2d 575].) When analyzing a regulation, we keep in mind that a department has no power to propose and then adopt a rule that conflicts with the enabling statute. (See *Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.* (1999) 71 Cal.App.4th 1518, 1520 [84 Cal.Rptr.2d 621].)

Now to the bone of contention. California Code of Regulations, title 5, section 11969.9, subdivision (c)(1)(C) requires, "if relevant, documentation of the number of in-district students meaningfully interested in attending the charter school." According to Centinela, all charter schools must provide documentation with their facilities requests. Environmental, in contrast, posits that the documentation requirement applies to new charter schools but not existing charter schools. Alternatively, Environmental suggests that if the documentation requirement does apply, then it is void because it is inconsistent with *Sequoia*'s interpretation of section 47614.

We examine this issue.

■ Section 47614, subdivision (b)(2) provides that for each year a charter school desires facilities it must provide a reasonable projection of its "average daily classroom attendance by in-district students for the following year." California Code of Regulations, title 5, section 11969.9, subdivision (b) establishes: "To receive facilities during a particular fiscal year, a charter school must submit a written facilities request to the school district by October 1 of the preceding fiscal year." Next, subdivision (c)(1) of that regulation informs charter schools of what a written facilities request must include. The plain language of the regulation makes subdivision (c)(1)— which includes subdivision (c)(1)(C)—applicable to all charter schools, not just new charter schools. This reading is consistent with section 47614, subdivision (b)(2) because both, by their language, cover *any* facilities request.

Environmental directs our attention to the Department of Education's final statement of reasons for proposing California Code of Regulations, title 5,

section 11969.9. As it pertains to subdivision (c)(1)(C), the Department of Education stated: "The third item (C) is documentation of the number of in-district students that are meaningfully interested in enrolling in the charter school, if relevant. The purpose of this requirement is to enable school district review of reasonableness of the projections and verification that the charter school is operating in the school district, as defined. Developing a list of meaningfully interested students is required by previously existing law as part of the process for obtaining approval of a charter petition." This statement does not change our conclusion. Whether the requirement was part of the process for obtaining approval for a charter petition does not mean that it is not part of the process for reviewing the reasonableness of annual projections. Our bedrock, in any event, is the plain language of the regulation. Because the regulation has a plain meaning, we need not look to any other indicia of intent.

The next question is the impact of *Sequoia*.

■ Environmental suggests that *Sequoia* negates any argument that a charter school is required to provide student information. Untrue. The court explained in its final footnote that the regulations would have been satisfied if they had been operative because, *inter alia*, the charter school submitted documentation from 93 of the 110 students. That documentation may or may not have included the same type of information requested by Centinela. Regardless, the content of that documentation was never discussed in *Sequoia*, and the court did not have occasion to interpret what particular documentation is required by California Code of Regulations, title 5, section 11969.9, subdivision (c)(1)(C). It is axiomatic that cases are not authority for propositions not considered. (*People v. Alvarez* (2002) 27 Cal.4th 1161, 1176 [119 Cal.Rptr.2d 903, 46 P.3d 372].) What *Sequoia* did say, in its very brief dicta, actually undermines Environmental's position. As interpreted by *Sequoia*, the regulations require a charter school to make a "showing" of its projection. (*Sequoia, supra*, 112 Cal.App.4th at p. 196, fn. 4.) According to *Sequoia*, a showing was made because the charter school provided a declaration regarding historical retention rates and provided documents for 93 of the 110 students. Manifestly, the reference to a "showing" was acknowledgement of the documentation requirement.[5]

■ As a follow-up, Environmental tells us: "[Centinela] argues that [*Sequoia*] 'was decided on the basis of a straight interpretation of [section 47614],

---

[5] Insofar as *Sequoia* tacitly suggested that the documentation requirement is not triggered until a school district expresses its concern over the enrollment projections, we disagree. As we discuss in part IV, *post*, documentation must be submitted with the facilities request by October 1. We note that the timing issue was not one that *Sequoia* considered.

without regard to the . . . regulations.' [Citation.] [Centinela] then uses this 'distinction' to argue that the . . . regulations should control this Court's analysis, rather than [*Sequoia*'s] holding. [Citation.] However, California courts have held that when a regulation is in conflict with a statute, the statute controls." Tacitly, it seems, Environmental would have us hold that the documentation requirement in the regulation conflicts with section 47614. We decline. Section 47614 requires a charter school to provide a reasonable projection of expected enrollment, but it is otherwise silent as to what a facilities request should contain. Section 47614, subdivision (b)(6) permitted the Department of Education to propose implementing regulations that define "the procedures . . . for the request for . . . facilities." There is nothing in section 47614 that conflicts with a requirement that a facilities request include documentation.[6]

## IV. *Centinela Acted Within its Discretion by Denying the Facilities Request.*

Although Environmental submitted its facilities request by October 1, 2002, that request was incomplete. It did not provide any relevant documentation, i.e., documentation that would provide a foundation for Environmental's projections and enable Centinela to review the reasonableness of those projections. We fail to see how Centinela's conduct can be labeled arbitrary and capricious when Environmental ignored the applicable regulations.[7]

Our task is to ensure that Centinela has adequately considered all relevant factors, and has demonstrated a rational connection between those factors, the choice made, and the purposes of the enabling statute.

In its denial letter, Centinela wrote: "[Centinela] has not represented that the student information it requests is required by Proposition 39 or its regulations. However, the regulations do require a charter school to include in its facilities request documentation of the number of in-district students meaningfully interested in attending the charter school, if such students are purported to exist. [(Cal. Code Regs., tit. 5, § 11969.9, subd. (c)(1)(C).)] Curiously, this was the only information that the charter school excluded from its request. [Centinela] believes the charter school must prove that 'meaningfully interested' in-district students actually reside within [the school district.]" The denial letter went on to state: "[T]he

---

[6] Environmental makes nothing of the "if relevant" language other than to suggest that it is meant to limit the documentation requirement to new charter schools. In our view, documentation is always relevant if enrollment projections are based on underlying foundational data.

[7] We need not reach the laches issue.

charter school has not timely complied with [California Code of Regulations, title 5, section 11969.9, subdivision (c)(1)(C)]. The charter schools facilities request is incomplete, given the lack of documentation required by [California Code of Regulations, title 5, section 11969.9, subdivision (c)]. A proper (i.e., complete) request was due by October 1, 2002, for the 2003–2004 school year. [(Cal. Code Regs. tit. 5, § 11969.9, subd. (b).)] The charter school submitted its incomplete request on October 1, 2002, leaving no margin for error or correction. This means that the charter school cannot now timely complete its facilities request for 2003–2004. Since a timely request is a condition of receiving school facilities, the charter school is not entitled to receive facilities for 2003–2004." Last, Centinela wrote that its "interest in the information is more than simply a matter of ADA accounting. These students will be in [Centinela] facilities and [Centinela] has an interest in knowing who they are, for security and liability purposes. [Centinela] is not acting unreasonably in asking for this information."

Centinela considered the timeliness of the facilities request and the purpose of the documentation requirement in light of the regulations proposed and adopted pursuant to the enabling statute. Moreover, there is a rational connection between Centinela's denial of the facilities request and the lack of documentation. Due to the lack of documentation, Centinela was unable to verify meaningfully interested students and to satisfy its safety and liability concerns. It acted consistently with the dicta in *Sequoia* by asking that Environmental make a "showing." Moreover, Centinela did not grant Environmental's charter or provide it with facilities on a prior occasion. As a result, it was dealing with an unknown commodity and had every right to demand strict regulatory compliance before making a facilities offer.

Environmental tells us that it provided a reasonable projection and that its facilities request constituted sufficient documentation. This position is illogical. Its projections were entirely lacking in foundation. Unlike the charter school in *Sequoia*, Environmental did not identify the foundational data it relied upon, nor did it explain its methodology. It stated that its projections were based on "[t]he actual and total estimated ADA, in-District ADA and classroom ADA generated for fiscal years 2001–2002 and 2002–2003 for graduating classes 2005 and 2006" and "[b]ased upon the actual and total estimated ADA, in-District ADA and classroom ADA generated for fiscal years 2001–2002 and 2002–2003 for graduating classes 2005 and 2006, the projected ADA, in-District ADA and classroom ADA for the class that will graduate in 2007." Then it set forth a breakdown of projected in-district students. However, it never identified the number of currently enrolled students, the number of interested new students, or the historical retention rates. Also, it never explained how the projections were extrapolated from the

foundational data. From these empty projections Centinela could learn nothing about why Environmental was expecting to have 246 in-district students for the following school year. Finally, Environmental did not submit any documents to verify the unidentified data it was relying upon.

■ It is true that a school district must provide a charter with a reasonable opportunity to respond to any concerns about projections. But there is nothing in the regulations that requires a school district to accept and consider a facilities request that is incomplete and wholly lacking. Furthermore, the Department of Education and the Board of Education determined that a school district must have a facilities request by October 1 of the preceding school year. Those two entities have been charged with proposing and adopting regulations. We defer to their expertise and will not second-guess the wisdom of their deadlines. (See *California Hotel & Motel Assn. v. Industrial Welfare Com.* (1979) 25 Cal.3d 200, 211–212 [157 Cal.Rptr. 840, 599 P.2d 31] ["The courts exercise limited review of legislative acts by administrative bodies out of deference to the separation of powers between the Legislature and the judiciary, to the legislative delegation of administrative authority to the agency, and to the presumed expertise of the agency within its scope of authority"].)

Moreover, Centinela did not express any concerns about the projections. Rather, it ignored the deficient projections and lack of a described methodology and stated that the incomplete facilities request would be considered if Environmental provided certain student information. Centinela could have rejected the facilities request outright, but it did not. It acted in a fair manner. Environmental, on the other hand, refused the request for information and never suggested what alternative documentation it could offer as a reasonable substitute.

■ Because Centinela had every right to deny the facilities request for being incomplete, we need not decide what information a charter school must provide to satisfy California Code of Regulations, title 5, section 11969.9, subdivision (c)(1)(C). That issue is best left for another day when a charter school's timely submitted documentation is challenged as being deficient. Our holding is limited to this: When a charter school submits a facilities request, it must make a showing of its enrollment projections with relevant documents. We, like *Sequoia*, do not expect this showing to be arithmetically precise. However, it must be reasonable in the sense that it has some basis in logic, reason and experience.

## DISPOSITION

The judgment is reversed.

Centinela shall recover its costs on appeal.

Nott, Acting P. J., and Doi Todd, J., concurred.

A petition for a rehearing was denied September 10, 2004, and the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied December 15, 2004.