Filed 9/22/22  Marriage of L.M. and E.M. CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# COURT OF APPEAL, FOURTH APPELLATE DISTRICT

# DIVISION ONE

# STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of L.M. and E.M. | |
| L.M., | D078565 |
| Respondent, | |
| v. | (Super. Ct. No. 20FDV01251S) |
| E.M., | |
| Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Margo Lewis Hoy, retired Judge.  Affirmed.

E.M., in propria persona; Orozco Law Firm and Jose A. Orozco for Appellant.

Antonyan Miranda, Anthony J. Boucek, Ilona Antonyan and Case Kamshad for Respondent.

E.M.[1] (Husband) and L.M. (Wife) were in the process of divorce in a separate proceeding when Wife filed and received a temporary restraining order against Husband. After a three-day contested hearing, the trial court issued a domestic violence restraining order (DVRO) under the Domestic Violence Prevention Act (Fam. Code, § 6200 et seq. (DVPA)[2] against Husband for a one-year period.[3]

On appeal, Husband claims the trial court abused its discretion in granting the DVRO by applying the wrong legal standard. Alternatively, he claims the DVRO is not supported by substantial evidence. We affirm the DVRO.

---

[1]  Pursuant to rule 8.90 of the California Rules of Court, we refer to the parties by first and last initials only.

[2]  All statutory references are to the Family Code.

[3]  Although the DVRO expired at midnight on November 19, 2021 and Wife asserts that Husband's appeal is moot as a result, we exercise our discretion to decide the case on the merits. (See *Environmental Charter High School v. Centinela Valley Union High School Dist.* (2004) 122 Cal.App.4th 139, 144 [appellate court has discretion to resolve a moot appeal on the merits].) In so doing, we recognize that a domestic violence restraining order "is no ordinary injunction" and may have continuing collateral consequences. (*Curcio v. Pels* (2020) 47 Cal.App.5th 1, 13, fn. 6 (*Curcio*); *Ritchie v. Konrad* (2004) 115 Cal.App.4th 1275, 1291 [noting that, in a renewal of a protective order in a contested case, a court should consider various factors including the " 'burdens' the protective order imposes on the restrained party," which "can be very real" including potentially affecting a restrained person's employment and, if children are involved, custody].)

## FACTUAL AND PROCEDURAL BACKGROUND[4]

### *Overview*

Husband and Wife were married for almost 30 years. They had two children together, and Husband had a child from a prior relationship. All of their children are adults. Wife is very active and well-known in her community. According to Wife, their marriage had been rocky since about 2010.

Husband and Wife opened a business together in 1989 (the Business). In early 2020, Husband asked Wife for financial records for the Business, as the couple were contemplating divorce and Wife was its bookkeeper. After repeatedly asking Wife for these records, Husband in early March 2020 accessed her computer twice and downloaded its contents without Wife's permission. On March 26, Husband reviewed the contents of Wife's computer and learned she had been having an affair (with a man named David) and

---

[4] We grant Wife's September 2, 2022 unopposed (1) request for judicial notice of the issuance of a "renewed" domestic violence restraining order based on the stipulation of the parties at an August 30, 2022 hearing (Renewed-DVRO) and (2) motion to augment the record with the August 30 hearing transcript. However, we note the record—as now augmented—does not show *when* Wife moved for renewal of the DVRO, as the original restraining order expired on November 19, 2021, and the Renewed-DVRO did not issue until August 30, 2022, or about nine months later. (See § 6345, subd. (a) [providing in relevant part that a restraining order "may be renewed . . . either for five years or permanently, without a showing of further abuse since the issuance of the original order, subject to termination or modification by further order of the court . . . . The request for renewal may be brought at any time within the *three months before* the expiration" of the original restraining order], italics added.) We offer no opinion regarding (1) the validity of the Renewed-DVRO, including whether it complies with section 6345, subdivision (a); and (2) whether Wife is entitled to an award of attorney fees in connection with this proceeding.

had already retained a divorce attorney. As particularly relevant to this appeal, Husband also found nude pictures of Wife, sexually explicit videos she had had taken of herself, and sexually explicit text messages she had exchanged with David (hereafter, Personal Information). Upon learning of Wife's affair and seeing the sexually explicit materials, Husband was depressed and distraught.

Later that day, Husband sent a series of text messages to a group of about 10 people (the Group), including Wife; her parents, brother, friends, and coworkers; and their children. In one of the messages, Husband wrote, "I have almost a hundred gigs of information up on the cloud under key. No one in my office has passwords or anything, but should anything happen to me, the information will be released." He added, "There are hundreds of pictures that [Wife] has freely shared with [David] and other people. Nudes. She's actually [a] pretty good photographer"; and, "You know me, I'm a stickler for the law. The pictures are taken with a phone paid for by [the Business] and they resided in a computer paid for by [the Business], so I'm pretty sure they belong to [the Business] and I can publish them."

In another message, Husband claimed Wife gave him a sexually transmitted disease (STD). He wrote, "The STD is actually quite disgusting as she got them from a gas station attendant who called, because he was worried about [Wife's] well-being. She had gotten home and was so drunk she literally passed out in front of . . . a dresser"; and "[s]tories will continue; there are lots."[5]

---

[5] At the contested hearing, Wife denied passing out drunk or giving Husband an STD. Wife also claimed Husband in the past threatened to disseminate untrue information about her if she threatened divorce.

On March 27, Wife obtained a temporary restraining order (TRO)[6] against Husband and a hearing was scheduled for a permanent restraining order.[7] The TRO provided that Husband was not to disseminate the Personal Information and/or contact Wife. Wife subsequently claimed Husband violated the TRO at least four times by indirectly contacting her through family and friends. Husband denied the violations. On or about May 29, Husband filed his own request for a restraining order.

---

[6] Wife testified at the contested hearing there were prior incidents of abuse by Husband that also supported issuance of a restraining order. Because the trial court did not rely on these other incidents in issuing the DVRO and the parties do not assert error as a result, we do not address them.

[7] Neither Wife's application for a TRO nor the TRO are included in the record. In fact, other than the August 30 hearing that was the subject of Wife's September 2, 2022 augmentation request, the clerk's transcript in this case is limited to 36 pages and includes *only* the DVRO issued on November 20, 2020; the trial court minutes from the same day; the Register of Actions, identifying the dates various documents were filed in the trial court through June 30, 2021 (i.e., more than three months before expiration of the DVRO); and the notice of appeal and designation of the record.

*Contested Hearing*

**Witness Testimony**

The hearing on both restraining orders commenced on August 18. Wife testified about the text messages Husband sent to the Group on March 26, as summarized *ante*. Wife stated she was "completely humiliated and mortified" when she saw the messages. She was concerned Husband would disseminate the Personal Information she maintained he had "stole[n]" from her. Although Wife also used her computer for work, she considered it to be her personal computer, as it was her only computer, she kept "all" of her private information on it, and Husband had his own computer. Wife initially attempted to access Husband's cloud account to delete her Personal Information. She also consulted with a security firm in an unsuccessful attempt to locate the Personal Information.

In support of Husband's request for a restraining order, his counsel, Jose Orozco, filed a declaration in the superior court. Mr. Orozco stated that "several witnesses need to be called and hundreds of exhibits, including hundreds of graphic and offensive text messages by [Wife,] and hundreds of graphic and offensive pictures of [her,] need to be admitted" at the upcoming contested hearing. Wife testified Mr. Orozco's declaration included some of her Personal Information (i.e., sexually explicit text messages) as an exhibit. She was "humiliat[ed] and mortif[ied]" that her Personal Information was in the "public record." Wife in response sought a court order to seal the records after Husband refused to stipulate to such an order.[8] Wife believed Husband

_____

[8] The record is silent whether the trial court ordered Wife's Personal Information sealed, as her motion was still pending when the court granted the DVRO.

was "blackmail[ing]" her by keeping her Personal Information, despite her repeated requests that he return and/or destroy it.

Wife explained that in June she sought discovery of all documents identified in the Orozco declaration. In his verified response to this request, Husband stated, "Responding Party is unable to comply with this demand as he is not in possession, custody or control of such requested items which should be responsive to this request." Husband provided a nearly identical response to Wife's demand for copies of "any and all photographs, videos and text messages of [Wife]" that Husband provided to Mr. Orozco. Wife testified Husband's claim not to have "possession, custody or control" of these items caused her even more emotional distress.

Wife testified she attended Husband's August 3 deposition, and that he admitted downloading her Personal Information to a hard drive. Wife stated this was the first time she learned Husband may not have stored her Personal Information in a cloud account, as he had messaged the Group on March 26. Wife believed Husband "lie[d]" about where he kept her Personal Information, one time claiming it was in the cloud, while another time claiming it was on a hard drive, to make her "afraid" over its whereabouts and possible dissemination.

Toward the end of the August 18 hearing, the trial court made some observations regarding the focus of the restraining order proceeding: "It is clear to me that [Wife's] request for domestic violence restraining order revolves primarily on the fact that she had personal information on a computer that she thought was personal, it was obtained by [Husband]. It is her belief that, one, he has disseminated it; two, he continues to own it, continues to have it, has threatened, is in his possession, that he continues to threaten that he will use it, and the basis of that is the email to the 10

7

people.  That is the primary claim that [Wife is] making."  In response, Wife agreed with the trial court's statement, while Husband believed the case was not about her Personal Information but whether Wife could prove she was being "controlled" and "stalked" by him as she also alleged in her application for a restraining order.

The trial court also expressed concern over the whereabouts of Wife's Personal Information, noting that after a full-day of testimony it was still unclear if the Personal Information had been distributed or destroyed by Husband or whether he was still in control of it.  The court noted there was no dispute that Wife had had an affair, that Husband first learned of the affair when he accessed her computer in March, and that as a result he understandably was very upset.  Nonetheless, the court noted California was a "no fault" divorce state and the relevancy of Wife's affair was "pretty limited."

At the continued October 13 hearing, Wife confirmed Husband still had not returned her Personal Information, despite the concerns the court expressed at the prior hearing.  As the questioning of Wife continued, the court again reminded the parties that Wife was alleging continued harassment by Husband based on his retention of, and threats to disclose, her Personal Information.

On questioning by the trial court, Wife testified that, to her knowledge, David had not disseminated any of her Personal Information and instead had deleted it.  When asked who had seen the Personal Information other than this individual and Husband, Wife identified Mr. Orozco, and also stated she knew Husband had "discussed" it with some of their employees.  She was unsure if they had seen "actual pictures" of her.

As a witness called in Wife's case, Husband testified he sent the text messages to the Group on March 26. He admitted some of the information in those messages was "false," including that he had uploaded the information to a cloud account and that no one in his office had a password to this account. At the hearing he conceded that "everyone in [his] office has passwords to [his] iCloud account." He admitted that when asked at his deposition if he had a cloud account, he initially said, " 'I don't know,' " then, on further questioning, used his phone and located as many as three such accounts. When asked why he wrote the March 26 messages, he stated it was to "protect" himself.

Husband admitted Wife had been "exclusively" using her computer for a "couple of years" when he accessed it on two occasions without her permission. Husband knew Wife used her computer for purposes other than business and, although looking only for financial records, he nonetheless twice downloaded its *entire* contents on a hard drive while she was away from their home. He then used the hard drive to download the contents of Wife's computer to his own computer, and also gave Mr. Orozco a separate hard drive containing this information.

Husband admitted at the time of his August 3 deposition that Wife's Personal Information was on a hard drive he kept at the office and not in a cloud account. Husband also admitted that, when he signed the verification under penalty of perjury that he no longer had any of the sexually explicit text messages Mr. Orozco had attached to his declaration, Husband was in fact in possession of these documents. Husband testified he wanted these documents to remain a matter of public record as a means to "defend" himself because Wife had "lied" to and "wrong[ed]" him.

Near the conclusion of the second day of testimony, the trial court again stressed that the restraining order hearing was about Wife's Personal Information downloaded by Husband. The court commented that if Husband had returned her Personal Information, they "might not be here today."

The DVRO hearing concluded on November 20. In support of Husband's request for a restraining order, he testified about his downloading the contents of Wife's computer, his reasons for doing so, and his discovery of what he described as "[Wife]'s porn," including "hundreds of pictures" of her naked, as well as sexually explicit "movies" of her and text messages to and from her. Husband was "absolutely destroyed" when he learned of Wife's affair and discovered her Personal Information. During the November 20 hearing, Husband also claimed Wife verbally and physically abused him during their marriage.

**Court's Ruling**

After closing arguments, the trial court ruled from the bench. It found Husband provided no credible evidence to support issuance of a restraining order against Wife.[9] It also found Wife had "more than met her burden of proof" to show Husband was disturbing her peace, entitling her to a DVRO for a one-year period. The court rejected Wife's claims of Husband's "controlling behavior" of her person or their finances, or any physical abuse by him, but found Husband was "play[ing] games" with Wife's Personal Information since he first obtained it in March.

Specifically, the trial court found Wife intended the Personal Information to remain private and certainly never intended that Husband

_____

[9]    Husband on appeal has not challenged the trial court's denial of a restraining order against Wife.

10

have access to it; Husband was not credible and his testimony "inconsistent" and "all over the place" regarding where he stored her Personal Information and who, other than his attorney, had access to it; and "one minute [Husband] knows what a cloud is, and he's emailing about it and telling [Wife] that's where it's all stored," "then in a deposition, he's not even sure what a cloud is and how to access it," while acknowledging his employees have access to his cloud account(s). The court further observed that, although Husband claimed he needed to keep the Personal Information to "protect" himself, there was no credible evidence his safety was ever in jeopardy from anyone including Wife; he caused some of her Personal Information to be publicly disclosed when his attorney attached sexually explicit emails belonging to Wife to his declaration and filed it with the court; and that Husband was not "forthcoming" in discovery responses when he claimed not to have "possession, custody or control" of these emails.

The trial court found Husband's "harassment" of Wife and his "ongoing disturb[ance] of her peace" resulted from his failure to return her Personal Information, his inconsistent testimony regarding where it was stored and who had access to it, and the continued threat he would use it against Wife by publicly disseminating it. The court noted Husband could have returned her Personal Information the "minute" the TRO issued, which likely would have changed the outcome of the proceeding. But Husband "[didn't] stop there," as he wanted her sexually explicit text messages to remain public so that people would know "what happened to him" in order to "defend his good honor."

The court found Husband's behavior "tantamount to extortion": "You do what I want or I'm going to let everybody know the real truth about you. You're a cheater and embarrass you with videos and text messages and

11

pictures, and that undoubtedly is clear to this court.  This is hanging over her head as a threat every single day, and to this very day, he still holds them."  "And I find it ironic that . . . since this [case] was filed [in] March to now, there has been no indication or attempt at resolution that let's just give them back to [her], especially after you found out this court did not find them relevant to these proceedings.  He's holding on to them.  There's a reason, and that reason disturbs her peace."

In addition to stay-away and move-out orders, the trial court in the DVRO ordered Husband and his counsel "not to disseminate any of [Wife's Personal Information]."  It also ordered Husband to return the "external hard drive" containing the Personal Information taken from Wife's computer, to permanently delete all of this Personal Information—including "any duplicates"—on his computer or in any cloud account, and to provide proof to Wife and her counsel of compliance with these orders by October 4.[10]  The court indicated it would retain jurisdiction to ensure Husband met the October 4 deadline.[11]

## DISCUSSION

### A.  *Guiding Principles*

The DVPA authorizes a trial court to issue a protective order to "prevent acts of domestic violence, abuse, and sexual abuse and to provide for a separation of the persons involved in the domestic violence for a period sufficient to enable these persons to seek a resolution of the causes of the

---

[10]  The trial court stated Husband could keep a copy of the Business's financial records that he obtained from Wife's computer.

[11]  Although not part of the record, in his opening brief Husband states he complied with these orders.  At oral argument before this court, Wife confirmed Husband had in fact complied with these orders.

violence" (§ 6220), upon "reasonable proof of a past act or acts of abuse" (§ 6300, subd. (a)). The DVPA should "be broadly construed in order to accomplish [its] purpose" of preventing acts of domestic abuse. (*In re Marriage of Nadkarni* (2009) 173 Cal.App.4th 1483, 1498 (*Nadkarni*).)

As relevant here, "abuse" includes "engag[ing] in any behavior that has been or could be enjoined pursuant to section 6320." (§ 6203, subd, (a)(4); *id.*, subd. (b) ["Abuse is not limited to the actual infliction of physical injury or assault."].)

When the trial court issued the DVRO in November 2020, subdivision (a) of section 6320 provided in relevant part: "The court may issue an ex parte order enjoining a party from . . . disturbing the peace of the other party, and, in the discretion of the court, on a showing of good cause, of other named family or household members." (Former § 6320, subd. (a)[12]; *Nadkarni*, *supra*, 173 Cal.App.4th at p. 1497 ["section 6320 broadly provides that 'disturbing the peace of the other party' constitutes abuse for the purposes of the DVPA"].)

We review a trial court's factual findings under section 6320 for substantial evidence. (*J.J. v. M.F.* (2014) 223 Cal.App.4th 968, 975.) "We

---

[12] Since the trial court's grant of the DVRO, section 6320 has twice been amended by the Legislature. Effective January 1, 2021, subdivision (c) of section 6320 was amended to define "disturbing the peace of the other party" as used in subdivision (a). (Stats. 2020, ch. 248, § 2.) Subdivision (c) was further amended effective January 1, 2022 (Stats. 2021, ch. 135, § 1) and now provides in part: " 'disturbing the peace of the other party' refers to conduct that, based on the totality of the circumstances, destroys the mental or emotional calm of the other party. This conduct may be committed directly or indirectly, including through the use of a third party, and by any method or through any means including, but not limited to, telephone, online accounts, text messages, internet-connected devices, or other electronic technologies." (§ 6320, subd. (c).)

draw all reasonable inferences in support of the court's ruling and defer to the court's express or implied findings when supported by substantial evidence." (*J.M. v. G.H.* (2014) 228 Cal.App.4th 925, 935.) "All conflicts in the evidence are drawn in favor of the judgment," and "[w]hen supported by substantial evidence, we must defer to the trial court's findings," including its finding on the credibility of witnesses. (*Niko v. Foreman* (2006) 144 Cal.App.4th 344, 364-365 (*Niko*); *Sabbah v. Sabbah* (2007) 151 Cal.App.4th 818, 823 [" 'We must accept as true all evidence . . . tending to establish the correctness of the trial court's findings . . . , resolving every conflict in favor of the judgment.' "].)

A protective order granted under the DVPA is reviewed for abuse of discretion. (*In re Marriage of Davila & Mejia* (2018) 29 Cal.App.4th 220, 226 (*Davila*); *In re Marriage of Evilsizor & Sweeney* (2015) 237 Cal.App.4th 1416, 1424 (*Evilsizor*).) This is because the grant of a protective order " ' " 'rests in the sound discretion of the trial court upon a consideration of all the particular circumstances of each individual case.' " ' " (*Nadkarni, supra*, 173 Cal.App.4th at p. 1495.)

### B. *Analysis*

*Nadkarni* guides our analysis in this case. In *Nadkarni*, former husband accessed ex-wife's email account without her permission and obtained copies of emails between her and third parties, including her attorney. Former husband then attached some of the emails to documents he filed in the superior court in connection with the parties' ongoing custody dispute involving their two teenaged children. Ex-wife obtained a TRO preventing former husband from disturbing her peace " 'through the use of personal information accessed through [ex-wife's] email.' " (*Nadkarni, supra*, 173 Cal.App.4th at p. 1488.) The trial court subsequently dismissed her

14

application to extend the TRO without conducting an evidentiary hearing, finding former husband's conduct insufficient to constitute "abuse" within the meaning of the DVPA. The Court of Appeal reversed.

In finding ex-wife's application to be facially sufficient, *Nadkarni* concluded that "disturbing the peace of the other party"—language then undefined—"may be properly understood as conduct that destroys the mental or emotional calm of the other party" (*Nadkarni*, *supra*, 173 Cal.App.4th at p. 1497);[13] and therefore, under the plain meaning rule "former husband's alleged conduct in destroying the mental or emotional calm of his former wife by accessing, reading and publicly disclosing her confidential e-mails" may constitute "abuse" under the DVPA (*id.*, at p. 1498). Although *Nadkarni* did not decide the truth of ex-wife's allegations of abuse and remanded the matter for a hearing on the merits, it noted former husband's conduct allegedly caused ex-wife to "suffer 'shock' and 'embarrassment,' to fear the destruction of her 'business relationships,' and to fear for her safety. In other words, [former husband's] conduct with respect to [ex-wife's] e-mail account, as stated in her declaration, allegedly caused the destruction of her mental or emotional calm and could, if found to be true, constitute 'disturbing the peace of the other party.' " (*Id.*, at p. 1499.)

The courts have followed *Nadkarni* to support issuance of a domestic violence restraining order for conduct that "disturbs the peace" of another based on obtaining and disseminating that party's private

13 As noted *ante* in footnote 12, *Nadkarni*'s definition of "disturbing the peace of the other party" has now been incorporated into amended subdivision (c) of section 6320. (See Sen. Rules Com., Off. of Sen. Floor Analyses, Unfinished Business Analysis of Sen. Bill No. 1141, as amended Aug. 6, 2020, p. 1 [noting the amendment to section 6320 merely "codifie[d] and elaborate[d]" on previous case authority].)

15

information/communications without his or her permission. For example, in *Evilsizor*, husband downloaded tens of thousands of text messages from wife's cellphone without her knowledge, including "notes" that she used as a diary. After dissolution proceedings were initiated, husband filed copies of some of the downloaded information in the superior court, leading wife to seek a restraining order under the DVPA to stop him from further disseminating this information. The trial court found husband's actions disturbed wife's peace within the meaning of former section 6320, subdivision (a), and issued a DVRO in favor of wife " 'because you're [i.e., Husband] going around either disclosing or threatening to disclose to third parties for no particular reason intimate details of your lives.' " (*Evilsizor*, *supra*, 237 Cal.App.4th at p. 1425.)

In affirming, *Evilsizor* found substantial evidence supported the court's issuance of the restraining order despite the parties' dispute over the events that led to the order; adding, "[T]he trial court was in the best position to evaluate credibility and to resolve factual disputes, and our review of the record reveals sufficient evidence to conclude that the court's order was not an abuse of discretion." (*Evilsizor*, *supra*, 237 Cal.App.4th at pp. 1426-1427.)

Here, the record contains ample evidence to support the trial court's factual findings, and those facts demonstrate the court properly exercised it discretion in issuing the one-year DVRO against Husband. (See *Davila*, *supra*, 29 Cal.App.4th at p. 226.) Similar to the facts of *Nadkarni* and *Evilsizor*, Husband, without Wife's permission, accessed and downloaded the *entire* contents of her personal computer on *two* occasions while looking for financial information about the Business, as they were contemplating divorce. Upon discovering Wife's Personal Information, which Husband admitted would be humiliating and embarrassing to her if publicly disclosed,

Husband sent text messages to the Group threatening to do just that, describing in some detail the contents of the Personal Information including the existence of nude pictures of Wife.

*Eight months* later, Husband still had not returned Wife's Personal Information. In the interim, Husband (1) had provided inconsistent testimony at his deposition and the contested hearing regarding its whereabouts, including how her Personal Information was being stored; initially claiming that it was in a cloud account in which nobody but he had access, at another point claiming he did not even know if he had a cloud account, only to admit he had as many as three such accounts that employees of the Business could access, and then claiming it was not in any cloud account but instead on a hard drive he kept in his office; (2) had falsely declared under penalty of perjury in his July 31 verification that Wife's sexually explicit text messages were no longer in his "possession, custody or control," supporting the inference that he was punishing Wife for having an affair and causing her additional anxiety about further disclosure of her Personal Information; and (3) had ignored the trial court's statements expressing concern over the whereabouts of Wife's Personal Information, even after it noted Wife's affair and her Personal Information were of "limited" relevancy in a no-fault divorce state like California.

But that's not all.

When Husband's attorney on May 29 attached sexually explicit text messages from Wife's computer as an exhibit filed in the superior court, Husband refused to informally agree to seal these now public documents. In this same declaration, Husband's attorney stated there were *hundreds* of similar documents belonging to Wife—including naked pictures of her—that should be admitted at the upcoming contested hearing. Husband testified he

wanted these documents to remain public because Wife had "lied" to and "wrong[ed]" him.

The trial court also found Husband not credible. It noted Husband's testimony was "inconsistent" and "all over the place" regarding the whereabouts, and his control, of Wife's Personal Information, as further support that he was disturbing her peace on an everyday basis by "play[ing] games" with it. We cannot, and will not, disturb the court's credibility finding. (See *Niko*, *supra*, 144 Cal.App.4th at p. 364 [credibility determinations are the province of the trier of fact].)

From the foregoing, we conclude the trial court's finding that Husband was "play[ing] games" with Wife's Personal Information, using it as a form of "extortion" over her, is amply supported by the record in this case; and supports the finding that his conduct constituted ongoing harassment and "abuse" under the DVPA.

We reject Husband's claims he did not engage in a course of conduct that affected Wife's mental "calm" and that his actions in March 2020 should be viewed as "an isolated situational incident." We also reject Husband's reliance on *Curcio*, *supra*, 47 Cal.App.5th 1, in support of his argument there is insufficient evidence he disturbed Wife's "peace" within the meaning of former section 6320, subdivision (a). *Curcio* involved two romantic partners in which the petitioner had secured a restraining order based on, among other allegations, her partner's *single*, *private* social media post about the petitioner. In reversing, *Curcio* concluded this single post was insufficient to support the issuance of a restraining order for the disturbance of the petitioner's peace. (*Id.*, at pp. 12-13.) *Curcio* is factually inapposite, as a single, private media post is nothing like the conduct of Husband in the instant case. Husband also fails to acknowledge evidence showing that after

18

his initial messages, sexually explicit texts and photos were made part of the public record; he was untruthful about the whereabouts of the Personal Information; and he refused several requests to turn over the materials he had downloaded from Wife's computer. Such evidence fully supports the court's imposition of the one-year DVRO.

## DISPOSITION

The trial court's November 20, 2020 order restraining Husband under the DVPA is affirmed. Wife to recover her costs on appeal.

HALLER, Acting P. J.

WE CONCUR:

DO, J.

BUCHANAN, J.